**Leola E. GOODMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 92–2907.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1993.

Decided Aug. 17, 1993.

---

Jeffery L. Viken, Rapid City, SD, argued (Terry L. Pechota, on the brief), for appellant.

Diana Ryan, Asst. U.S. Atty., Rapid City, SD, for appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Leola Goodman sued the United States under the Federal Tort Claims Act (FTCA) for medical malpractice at an Indian Health Service hospital (IHS) in Pine Ridge, South Dakota. She claimed that she received substandard medical attention during the diagnosis and treatment of vertebral osteomyelitis, a disease of the spinal cord, and maintains that IHS is liable for its own acts of negligence and under the theory of *respondeat superior*. The case was tried to the court [1] and after judgment was rendered for the defendant this appeal ensued. We affirm.

## I.

Ms. Goodman visited IHS numerous times complaining repeatedly of back pain and other ailments. She underwent bone scan testing, the most effective test available for diagnosing vertebral osteomyelitis. After she had been seen on several visits over a period of months by various doctors and physician's assistants, she was eventually diagnosed. Ms. Goodman's allegations of negligence, for which she posits that IHS is vicariously liable, deal principally with the alleged failures of one Oswaldo Santos, a physician's assistant at IHS, and Dr. Robert Jaffe. The trial court, however, did not reach the ultimate merits of these negligence claims, because it ruled that plaintiff had failed to produce evidence that the standard of care to which defendant was legally bound was violated. The court held that the healthcare providers were obligated to deliver medical services that conformed to those provided by persons "practicing in other IHS hospitals in this region." Because plaintiff's experts did not testify as to what that standard was under the circumstances and facts of this case, the trial court held for defendant.

Plaintiff argues that the health-care providers are legally accountable if they violate standards of care generally applicable in the nation as a whole. We disagree. In this FTCA case, we are, of course, bound to apply the law of the state in which the acts complained of occurred. *See* 28 U.S.C. § 1346(b); *see also Celestine v. United States,* 841 F.2d 851, 853 (8th Cir.1988) (*per*

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

*curiam* ). In South Dakota, medical professionals are bound to possess and apply "that degree of learning and skill ordinarily possessed by [medical professionals] of good standing engaged in the same type of practice in the same or similar locality." *In the Matter of Yemmanur,* 447 N.W.2d 525, 528 n. 3 (S.D.1989).

We have some doubt that the trial court's refinement of that standard to the type of care provided at IHS hospitals in the region, as opposed to regional hospitals generally, would be accepted by the South Dakota courts. But we are clear that the individuals whose conduct is claimed to be tortious here are not required to adhere to national standards of care. In South Dakota, only medical specialists (for instance, physicians who are board-certified) are measured against such a standard. *See, e.g., Shamburger v. Behrens,* 418 N.W.2d 299, 306 (S.D.1988); *see also In the Matter of Yemmanur,* 447 N.W.2d at 529 n. 4. Even if the trial court arrived at its conclusion by applying an erroneous legal standard, therefore, plaintiff's proof was deficient in any case and the court correctly dismissed the action.

## II.

■ Plaintiff also asserts that the hospital, independently of the principles of *respondeat superior,* is itself liable under theories of negligence with which the district court did not adequately deal. She calls our attention, first, to *Shamburger v. Behrens,* 380 N.W.2d 659, 665 (S.D.1986), which holds that "separate liability in negligence attaches to a hospital when it has breached its own standards." She asserts that IHS rules required a physician to review and countersign all treatment rendered by a physician's assistant, and that this was not done in her case. The trial court concluded, however, that the rule had in fact been adhered to. More importantly, it made it clear that the medical testimony on which plaintiff relied established only the expert's "general sense" that "something different should have been done"; and there is no evidence from which it could have been rationally concluded that the hospital's failure, if any, to follow its own rules was the proximate cause of any quantifiable injury. We offer the same observation with respect to plaintiff's claim that there was a failure by one of her treating physicians to follow up after she was released at one point during her treatment. She states no reason, moreover, why this inaction could amount to an independent act of negligence on the part of the hospital.

Finally, plaintiff points to an alleged failure of the hospital to provide an examination by a licensed medical doctor after she returned to IHS following her release. She claims that if that had occurred, "in all likelihood the physician would have recognized the medical emergency" and diagnosed her condition. Plaintiff complains that the trial court failed to address this theory of liability, and in fact there seems to be no specific mention of it in the court's findings and conclusions. Nevertheless, we detect no error here: There was no evidence that any applicable standard of care required that hospitals not employ physician's assistants in emergency rooms or that the hospital was under a statutory duty, or one established by regulation, to employ only physicians in its treatment operations.

## III.

For the reasons stated, we affirm the district court.